ARTURO IZQUIERDO, Plaintiff and Petitioner, *v.* JULIO IZQUIERDO SERRANO ET AL., Defendants and Respondents.

No. 11494. Submitted July 8, 1957.—Decided May 26, 1959.

*Juan Nevárez Santiago* for petitioner. *José C. Jusino* for respondent Izquierdo. *Diego Guerrero Noble* and *Carlos D. Vázquez* for respondent Godínez. *Artemio P. Rodríguez* and *Baldomero Roig Vélez* for respondent The West Indies Missions Board of the United Lutheran Church of America.

ORDER

San Juan, Puerto Rico, May 26, 1959.

The foregoing motion for reconsideration is hereby denied.

It was so agreed by the Court as witness the signature of the Acting Chief Justice. Mr. Justice Belaval dissented in a written opinion. Mr. Chief Justice Negrón Fernández did not participate herein.

ON RECONSIDERATION

MR. JUSTICE BELAVAL, dissenting.

We have very little to add to our original dissenting opinion—*Izquierdo* v. *Izquierdo*, 80 P.R.R. 68, 76, 93 (Marrero) (1957).

The facts alleged, in their simplest form, are as follows: Dr. Eladio Izquierdo Serrano died intestate on October 10, 1932, leaving as his sole and universal heirs his children, Alfredo Izquierdo Negrón and José A. Izquierdo Rivera. At his death, Dr. Izquierdo left six properties which his two afore-mentioned children acquired by hereditary right. The property tax thereon was not paid and the Treasurer of Puerto Rico, without notifying the heirs, owners of said properties, sold them at public auction (pp. 69 and 70–71). The defendants are the acquirers or subacquirers of the properties sold by the Treasurer of Puerto Rico, for the recovery of tax.

The question for decision is whether there being proof in the registry of the distress proceeding as well as of the award in the auction sale, any subacquirer becomes a third party.

Registral protection has four basic requirements: (1) having acquired from a party who, according to the registry, has a right to convey the property; (2) that the so-conveyed right be recorded; (3) that the prior title capable of producing the nullity of the subsequent registration should not appear in the registry; (4) that the cause of nullity should not appear clearly from said registry (§ 34 of the Mortgage Law of Puerto Rico).

The first proposition sanctions the principle of successive performance. It is interrupted when it is acquired from a person other than the one appearing as record owner; the second proposition sanctions the principle of service, not only in the case of a title sufficient in itself (§ 34), but also in the case of a potential right (§ 69).

The third proposition sanctions the principle of the public registral faith. As Roca Sastre says: "The protection of the principle of the public faith acts independently of whether the third acquirer might or might not have consulted the entries in the registry and whether he actually knows its contents, everything being maintained as if such consultation and subsequent knowledge had taken place. The Act presupposes that the third acquirer knew the terms of the registry and entered into the contract after having examined the records." I Roca Sastre, *Derecho Hipotecario* (5th ed. by Editorial Bosch, 1954), 434. As to the analysis of the mortgage maxim: "That which is not recorded does not prejudice a third party," see my former dissenting opinion in this same case.

The fourth proposition flows from the principle of publicity. If the cause of nullity clearly appears in the registry, the acquirer and subacquirer cannot allege ignorance thereof. Let us hear what Roca Sastre has to say: "The true problem concerning the *explicit* notice in the registry of the causes of nullity or resolution (or rescission) is raised by such causes which rather than being expressly stated in the registry are interpolated in the entry made of the recorded act or title, and are neither a *condition*, properly speaking, nor an *exception or cautionary notice* expressly stated in the registry. Here the scope of the registral publicity is tested in full connection with the principle of the public faith.

"In these cases, when can it be affirmed whether or not a cause of nullity or resolution (or rescission) appears *explicitly* recorded?

"The solution depends on the circumstances of each case, which definitively is left to the discretion of the courts. But as a rule or test of construction, we must keep in mind that our system stands in this respect at a *middle point:* neither mere signs or conjectures, nor full detail or specification of the possibilities of nullity or resolution or other similar ones.

"On the other hand, no *concretion* is required concerning the possibility of nullity or resolution (or reversal, etc.), because since the *cause* appears recorded in an explicit manner, the consequences that it may entail are borne by the third acquirer, since he must know them by virtue of the principle that ignorance of the law excuses no one; it is not necessary that the cause be expressed in the sense of stating that according to law it may produce such and such destructive effects, *it being sufficient that said causes be stated* without any need of using the concepts of nullity or resolution (or rescission) (Calderón Neira, Gayoso, Morell, etc.)" Roca Sastre, *op. cit.* at 456–57. (Emphasis supplied.)

1. As to the first proposition of successive performance, we have refused in the past to recognize that a marshal, acting as such at an auction sale, is the "person who, according to the registry, had any right" to convey a property—*Trías* v. *Leaf Tobacco Co.*, 50 P.R.R. 88, 93 (Hutchison) (1936)—(judicial sale within a mortgage foreclosure proceeding). I fail to see how we could make a distinction when the sale is made by an Internal Revenue Agent in a distress proceeding for the recovery of tax. Where there is an interruption of successive performance, the registry does not guarantee the right of a third party because the acquirer or subacquirer buys "knowing that the validity of his title depends on that of the foreclosure proceeding." *Ayala* v. *Flores*, 50 P.R.R. 832, 833 (Travieso) (1937).

2. As to the third proposition concerning the public registral faith, there is no doubt that this action is based on a prior recorded title, that of Dr. Eladio Izquierdo Serrano, a title which is presumptively conveyed by virtue of the sale made by the Internal Revenue Agent, for the recovery of territorial taxes. We are not, therefore, concerned with a judicial or administrative declaration independent of the former recorded title, but rather with the same title in which the present owner finds refuge. In this situation everything

depends on whether the cause of nullity appears from the registry.

3. As to the fourth proposition, inspired on the principle of publicity, our case law has firmly established that the fact that the proceeding filed against the claimant and the result thereof appear in the registry, constitutes sufficient registral notice.

In the case of *Anaud* v. *Martínez et al.*, 40 P.R.R. 641, 648 (Hutchison) (1930) (nullity of a mortgage foreclosure proceeding), this Court held: "That the property had been awarded to Martínez as the sole bidder and purchaser, that he was the mortgage creditor in a summary foreclosure proceeding, and that the property had been conveyed by Martínez to Yenderrozo, the vendor of Cabo Rodríguez, are *facts which clearly appeared from the registry.* Rodríguez was thereby charged with notice that Martínez's title and therefore his own, depended on the validity of the foreclosure proceeding. He knew that if the foreclosure proceeding was void, Martínez had nothing to convey to Yenderrozo and Yenderrozo could not sell what he did not own . . . ." (Emphasis supplied.)

In the case of *Comunidad Religiosa etc.* v. *Fernández*, 61 P.R.R. 129, 138 (Snyder) (1942) (undue cancellation of an annuity of a property subsequently acquired as free from encumbrance), this Court decided citing the case of *Ochoa* v. *Hernández*, 230 U.S. 139, 164 (Pitney) (1913); 57 L. Ed. 1427, 1439, the following:

"It is a familiar doctrine, universally recognized where laws are in force for the registry or recording of instruments of conveyance, that every purchaser takes his title subject to any defects and infirmities that may be ascertained by reference to his claim of title as spread forth upon the public records. (Citing cases.)

"This principle is recognized in Articles 34 and 37 of the Mortgage Law. In referring to 'reasons which do not clearly appear from the registry,' and 'causes plainly expressed in the registry,' they refer of course to *matters of fact,* not to matters.

of law. In other words, if the registry gives notice of a *state of facts* that renders the title invalid or subject to question in law, the purchaser who relies upon the record takes his title subject to whatever consequences may flow in law from the *facts* thus notified." (Emphasis supplied.)

In the case of *Cruz v. Heirs of González*, 72 P.R.R. 291, 299 (De Jesús) (1951) (registrar's error in characterizing a judgment as final and unappealable), this Court held: "The Registrar's error in characterizing the judgment as final and unappealable does not alter the status of said properties in the registry, for only the *facts* appearing from the registry and not the conclusions of the Registrar determine the validity of recorded titles. . . . It is clear that if the certificate were admitted it would then be manifest that the defendants are not third parties." (Emphasis supplied.)

In the case of *Rivera v. Meléndez*, 72 P.R.R. 404, 410 (Marrero) (1951) (a writ of execution issued to the marshal of the Municipal Court of San Juan and indorsed by him to the Marshal of the Municipal Court of Fajardo), this Court held: " . . . When the marshal of this last court took action by virtue of the indorsement made to him by the Marshal of the Municipal Court of San Juan, his action was entirely null and void. (Citations.)

"From the Registry of Property, as we noted, there clearly appeared the cause of the nullity of the sale effectuated by the Marshal of the Municipal Court of Fajardo in favor of Faustino R. Fuertes. This being so, Ramón Meléndez Tabales and the firm Meléndez and Meléndez were not third persons . . . because although they did not take part in the act or contract which gave rise to the registration of the property in favor of Fuertes, nevertheless, the defect of the title appeared clearly from the registry, and, hence, they had notice of said defect . . ."

It is noted that the only difference between the commentaries of Roca Sastre and the contents of our decisions is that the former speaks of *causes* and the latter of *facts*. But

the principle is the same: If the cause of nullity, or facts sufficient to produce such nullity, appears from the registry, the subacquirer is not a third party, because he has acquired in accordance with the entries appearing in the registry.

In view of the foregoing I feel constrained to dissent from the decision which denies the motion for reconsideration in this case.